UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Brian Haver,

    Plaintiff,

v.

LVNV Funding, LLC,

    Defendant.
_____/

Case No. 21-cv-12893

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER: (1) GRANTING LVNV'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 42, 43]; (2) DENYING HAVER'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 41]; AND (3) FINDING AS MOOT LVNV'S MOTION FOR LEAVE [ECF NO. 49]**

## I.     Introduction

On December 10, 2021, Brian Haver ("Plaintiff" or "Haver") filed a complaint alleging claims against LVNV Funding, LLC ("Defendant" or "LVNV") under 15 U.S.C. § 1692e(8) of the Fair Debt Collection Practices Act (the "FDCPA"), M.C.L. § 339.915(e) of the Michigan Occupational Code (the "MOC"), and M.C.L. § 445.252(e) of the Michigan Collection Practices Act (the "MCPA").

Before the Court are cross motions for summary judgment. Haver filed his motion on August 28, 2023 [ECF No. 41]. LVNV responded on September 19, 2023 [ECF No. 45]. And Haver replied on October 3, 2023 [ECF No. 47]. LVNV filed its

1

motion on August 28, 2023 [ECF No. 42, 43]. Haver responded on September 18, 2023 [ECF No. 44]. LVNV replied on October 2, 2023 [ECF No. 44]. LVNV also filed a motion for leave to file new evidence on December 28, 2023 [ECF No. 49]. Haver responded on January 11, 2023 [ECF No. 50], and LVNV replied on January 18, 2024 [ECF No. 51]. The motions are fully briefed. The Court held oral argument pertaining to the cross motions for summary judgment on January 2, 2024.

Upon review of the briefing and applicable authority with respect to the LVNV's motion for leave, the Court concludes that oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve LVNV's motion for leave on the briefs. See E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth below, LVNV's motion for summary judgment is granted, Haver's motion for summary judgment is denied, and LVNV's motion for leave is moot.

## II.   Factual Background

Haver opened a credit card account with Citibank NA (the "Account"). After some time, he accrued a balance on the account but failed to pay the amount owed. The account was charged off and transferred to LVNV with a balance of $15,503.73. ECF 28-3, PageID.262. LVNV received notice of a written dispute pertaining to Haver's account. ECF 28-3, PageID.272. On October 8, 2021, Credit Repair Lawyers of America ("CRLAm") sent a letter to LVNV on Plaintiff's behalf. The letter claimed that Haver no longer disputed the Account and requested removal of

the dispute remark on the Account. LVNV conducted an investigation that resulted in it maintaining the dispute notation on the tradeline. ECF No. 14-3, PageID.79. "After all," LVNV said, "'Plaintiff's Consumer Dispute [(the letter CLRAm sent on Plaintiff's behalf)] stated that the account was 'inaccurate.'" *Id*. LVNV maintains that CRLAm's letter, "did not raise a bona fide dispute requiring Defendant to further update Plaintiff's credit report." *Id*.

Plaintiff alleges that, on November 19, 2021, and November 21, 2021, he "obtained his Equifax and Trans Union credit disclosures, respectively, both [disclosures showed] that Defendant last reported its tradeline to Equifax and Trans Union on November 3, 2021 and continued to report its account as disputed by Plaintiff." ECF No. 41, PageID.406. In his motion, Haver asserts that he was unable to obtain a refinancing of his mortgage "due to the presence of the dispute comment in" LVNV's "tradeline." ECF No. 44, PageID.579.

Haver believes that LVNV's failure to remove the dispute comment—despite the letter requesting it do so—violates the FDCPA. Specifically, he complains that LVNV violated the Act by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" in violation of 15 U.S.C. § 1692e(8). Haver sued LVNV for this alleged violation of the FDCPA, as well as for violations of the MOC and the MCPA. (*See generally* ECF No. 1.)

After discovery, the parties filed cross-motions for summary judgment. The Court considers these motions separately. See *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021). Because the Court finds that Haver lacks standing for his FDCPA claim, it will grant LVNV's motion for summary judgment and deny Haver's motion for summary judgment. It will also find that LVNV's motion for leave is moot.

### III. Applicable Law and Analysis

#### 1. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). No genuine dispute of material fact exists where the record "taken as a whole[,] could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251– 52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To determine whether a genuine dispute of material fact exists, the Court "draw[s] all reasonable inferences and view[s] the evidence in the light most favorable to the [nonmovant]." *Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013).

### 2. Article III Standing

"Whether a party has standing is an issue of the court's subject matter jurisdiction." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). The "irreducible constitutional minimum" of standing has three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that [injury must be] fairly traceable to the challenged conduct of the defendant, and (3) [that injury must be] likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting, in part, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

"The plaintiff bears the burden of establishing [all three elements of] standing." *Lyshe*, 854 F.3d at 857. He must support each element "in the same way as any other matter on which the plaintiff bears the burden of proof, that is, with the manner and degree of evidence required at successive stages of the litigation."

5

*Schickel v. Dilger*, 925 F.3d 858, 865 (6th Cir. 2019) (quoting *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014) (internal quotations omitted). Here, the case has reached the summary judgment stage. Accordingly, Haver "can no longer rest on ... mere allegations" and "must set forth evidence of specific facts that support standing." *Morgan v. LVNV Funding*, No. 21-12967, 2023 WL 5808365 (E.D. Mich. 2023), (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Below, the Court will discuss whether Haver satisfies the standing requirements.

### A. Injury-in-fact

Article III requires an injury that is concrete, particularized, and actual or imminent. *See Friends of the Earth, Inc. v. Laidlaw Env't. Servs.*, 528 U.S. 167, 180–81 (2000). The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426, 141 S. Ct. 2190, 2200, 210 L. Ed. 2d 568 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 341, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)); See also *Ward v. NPAS, Inc.*, 63 F.4th 576, 580 (6th Cir. 2023). Under Article III, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Ramirez*, 594 U.S. at 427. The Supreme Court has noted that "[c]entral to assessing concreteness is whether the asserted harm has a 'close

6

relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including ... reputational harm." *Id*. at 417 (quoting *Spokeo*, 578 U.S. at 340-41).

Accordingly, to satisfy the standing requirements as to his FDCPA claim, Haver must point to evidence which demonstrates "either that the procedural harm itself is a concrete injury of the sort traditionally recognized or that the procedural violations caused an independent concrete injury." *Ward v. NPAS, Inc.*, 63 F.4th 576, 580 (6th Cir. 2023) (citations omitted).

In his response, Haver asserts two possible varieties of concrete injury. First, he maintains that "[m]istatements to consumer reporting agencies or other third parties cause harm that is closely analogous to the harm traditionally regarded as providing the basis for libel and slander claims in English and American courts." ECF No. 44, PageID.576. Haver's first argument appears to assert that the intangible harm emanating from LVNV's actions—such as reputational harm—constitutes a concrete injury because it is analogous to the traditional harms associated with defamation. Second, he claims to have suffered emotional distress because of LVNV's actions. Lastly, Haver maintains that, "due to the presence of the dispute comment in Defendant's tradeline," he "was unable to refinance his mortgage," which would have saved him "a couple hundred dollars a month." ECF No. 44,

PageID.579. Haver's second and third arguments appear to assert that the alleged statutory violation caused independent concrete injuries.

Haver fails to demonstrate that the reputational harm he allegedly suffered is analogous to traditional harms associated with defamation, so his first argument cannot prevail. Haver also fails to demonstrate that the purported statutory violation caused independent concrete harm; thus, he does not satisfy the injury-in-fact requirement for Article III standing. Even if Haver did satisfy the injury-in-fact requirement, however, his claims would not prevail because he does not satisfy the traceability requirement. The Court will explain its rationale below, beginning with traditional harms first, addressing independent concrete injury second, and traceability last.

### (1) Traditional Harms

In support of his first argument, Haver relies on *Ewing v. Med-1 Sols., LLC*, 24 F.4th 1146 (7th Cir. 2022); and *Everhart v. Credit Vision, Inc.*, No. 1:20-CV-670, 2023 WL 2607274, at *1 (S.D. Ohio Mar. 23, 2023). In both cases, the respective courts—relying on the Supreme Court's decision in *TransUnion LLC v. Ramirez*—found that the standing requirements were satisfied with respect to debt collectors' FDCPA violations for failure to report a dispute. In those cases, the respective courts concluded that the injury was analogous to the harm associated with defamation.

8

Because Haver's claim is distinguishable from the claims in those cases, however, he cannot rely on defamation to establish standing here.

In *Ramirez*, the Supreme Court found that the plaintiff class members asserted an injury in fact based on TransUnion's failure to use reasonable procedures to ensure accuracy of credit files when it published credit reports that contained a misleading alert from the Office of Foreign Assets Control. *Ramirez*, 141 S. Ct. at 2208. In the Court's view, American law has stood for the proposition that an individual is injured "when a defamatory statement that would subject him to hatred, contempt, or ridicule is published to a third party." *Id*. (citations omitted). Because TransUnion published credit reports that "labeled the [plaintiff] class members as potential terrorists, drug traffickers, or serious criminals.[,]" the Court concluded that the plaintiffs suffered a harm akin to the sort of "reputational harm associated with the tort of defamation." *Id*.

Haver's alleged reputational harm is not so analogous to the reputational harm associated with defamation discussed in *Ramirez*. *Ramirez's* analogy rested on the information contained in the credit reports, which would subject the consumer to reputational harm associated with "hatred, contempt, or ridicule." *Ramirez*, 141 S. Ct. at 2208. Conversely, the reputational harm is not so clear here where Haver acknowledges that he did not pay the debt but nonetheless asks for the dispute

9

comment to be removed. The dispute comment would not appear to subject Haver to reputational harm analogous to "hatred, contempt, or ridicule[,]" as in *Ramirez*.

In *Ewing*, the debt collection companies failed to communicate the consumer's dispute of certain accounts to the credit-reporting agencies. *Ewing*, 24 F.4th at 1149–1151. In determining whether plaintiffs had alleged an injury sufficiently analogous to defamation, the *Ewing* court focused on the publication element of defamation. *Id*. Specifically, the Seventh Circuit concluded that plaintiffs "have shown that their injury is related closely to the harm caused by defamation." *Id*. at 1154.

Likewise, in *Everhart*, "a debt collector (Credit Vision) disseminated misleading information to a third-party credit reporting agency (TransUnion), by failing to report . . . that a disputed debt was disputed." *Everhart v. Credit Vision, Inc.*, No. 1:20-CV-670, 2023 WL 2607274, at *4 (S.D. Ohio Mar. 23, 2023). Relying on *Ewing* and affirming the magistrate judge's grant of a motion for default judgment, the court noted that "Everhart's injury has a common-law analogue. She's suing because misleading information about her has been disseminated to a third-party; that's closely analogous to defamation." *Id*. at *5.

*Ewing* and *Everhart* are distinguishable. Haver asks for the dispute comment to be removed; while the decisions in *Ewing* and *Everhart* turned on the failure of a

10

debt collector report a dispute comment in the first instance. Critically, the *Ewing* court's analogy between the respective reputational harms caused by defamation and the FDCPA violations rested on the debt collector's portrayal of the consumer "as a deadbeat who does not pay her debts." *Ewing*, 24 F.4th at 1154. In these circumstances, LVNV's reporting of his dispute to credit agencies does not falsely portray Haver as a "deadbeat who does not pay" his "debts." *Id*.

The distinction between Haver's circumstances and *Ewing* is further borne out by the court's discussion in *Morgan*. In *Morgan*—a case with nearly identical facts that was dismissed at the summary judgment stage for lack of standing—the court determined that "Morgan ha[d] not shown that creditors or other individuals who would see the dispute remark would act any differently towards him because of it." *Id*. *Morgan* also found that *Ewing* was distinguishable because the plaintiff failed to show "that the credit reporting agencies—who LVNV reports to—lowered his credit score, held him in lower 'estimation,' or penalized him in any way because they believed he still disputed the account when he actually did not." *Id*. "If anything," the court stated, "it seems like removing the dispute comment—and thereby implicitly acknowledging the unpaid debt—would cause reputational harm, rather than alleviate it." *Id*.

Similar to the plaintiff in *Morgan*, here, Haver fails to show that his credit score decreased as a result of LVNV's actions. It is true that Haver testified in his

11

deposition that he "wasn't able to get a mortgage [from Interfirst] as a result of" the dispute comment and, according to his "understanding[,]" "to get a mortgage you can't have any open accounts in dispute. . ." ECF No. 28-3, PageID.272. When asked "how did you get that understanding," he stated that he "looked up the regulations for commercial mortgages" on google. *Id*. at PageID.272, 275, 276, and 279. Notably, however, Interfirst sent Haver a denial letter that identified "excessive obligations in relation to [his] income" as the principal reason for the credit denial. *Id*. at PageID.278. Haver's testimony also indicates that the letter contained a checked box that said, "the decision was based on information obtained from an affiliate from an outside source other than a consumer reporting agency." ECF No. 28-3, PageID.278. It is undisputed that TransUnion and Equifax are consumer reporting agencies. Based on Haver's testimony, the credit denial letter seems to indicate that the denial was not based on the TransUnion and Equifax disclosures at issue in this litigation, though his belief that the dispute comment played a role in the denial remains. ECF No. 28-3, PageID.275.

Plaintiff argues that he is not required "to establish that the consumer reporting agencies published the false information to another party (such as a potential lender), because that would constitute 'fourth-party publication,' which *Ramirez* does not require." ECF No. 44, PageID.578 (citing *Ewing*, 24 F.4th at 1153). The Court does

12

not hold that fourth party publication is required to satisfy the standing requirements as they were framed in *Ramirez*.

To crystalize the distinction between LVNV's actions and a defamatory statement, however, the Court notes that, in *Ramirez* the credit report identified the plaintiffs as potential terrorists. In *Ewing*, the debt collector failed to report a dispute on a debt. The negative reputational ramifications emanating from the false statements in those cases were clear. Conversely, Haver's reputational harm is not so clear where he fails to demonstrate that the credit reporting agencies or the creditor to whom he applied held him in lower estimation or penalized him in any way because they believed he still disputed the account when he actually did not. As the *Morgan* decision suggests, *Ewing's* reasoning implies that one who disputes an account and fails to pay it would seem to have a better reputation than an individual who does not dispute the debt, fails to pay it. See *Morgan*, 2023 WL 5808365, at *4; See also *Saunders v. Branch Banking And Tr. Co. Of VA*, 526 F.3d 142, 150 (4th Cir. 2008) ("Certainly, if a consumer has a meritorious dispute—as the jury concluded Saunders did here—the consumer's failure to pay the debt does not reflect financial irresponsibility.").

Because Haver has not shown that the alleged false statement LVNV made to the consumer reporting agencies is similar to a defamatory statement, the Court finds that his injury is not sufficiently analogous to the harm associated with defamation.

13

Thus, Haver has not shown that the FDCPA violation itself is a concrete injury. Next, the Court discusses whether the alleged FDCPA violation caused an independent concrete injury.

### (2) Independent Concrete Harm

First, Plaintiff testified that he suffered emotional distress and that it was humiliating to have to rely on "his elderly parents having to help support his child" due to him "having more obligations and less disposable income." ECF No. 28-3, PageID.323.

Again, Haver has produced no evidence to show that having a dispute remark on his credit report limited his disposable income. And "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo*, 578 U.S. at 339 (citations omitted).

Haver's alleged injury is tenuous and speculative. The Sixth Circuit has noted that "a bare allegation of anxiety is not a cognizable, concrete injury." *Garland v. Orlans, PC*, 999 F.3d 432, 439–40 (6th Cir. 2021). And "general emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes." *Buchholz v. Tanick*, 946 F.3d 855, 861 (6th Cir. 2020) (quoting *Humane Soc. of U.S. v. Babbitt*, 46 F.3d 93, 98 (D.C. Cir. 1995)); see also *Human Soc. of U.S.*, 46 F.3d at

14

98 (holding that claims of "sleeplessness, depression, and anger" were insufficient to create an injury-in-fact for standing purposes). Further, "the mere existence of inaccurate information in a database is insufficient to confer Article III standing." *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2209 (2021) (citations omitted). The *Garland* court explained that a generalized statement of anxiety is "an intangible harm without a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit." *Garland*, 999 F.3d at 439.

In support of his argument, Haver relies on *Camaj*. In that case, the court held that the plaintiff—alleging that he suffered "emotional distress" and "physical symptoms including weakened nails and hair loss" as a result of the FDCPA violation—had alleged sufficient injuries to satisfy the injury-in-fact requirements. *Camaj v. Makower Abbate Guerra Weggner Vollmer PLLC*, No. 19-CV-10179, 2019 WL 6037597, at *2 (E.D. Mich. Nov. 14, 2019).

The notable distinction between the plaintiff in *Camaj* and Haver is that Camaj's emotional distress materialized into physical symptoms, which indicates some level of severity with respect to his emotional distress. Unlike *Camaj*, Haver says nothing about the severity of his emotional distress. As the *Garland* court noted, "[a]nxiety—a form of emotional harm—comes in many different shapes and sizes," "and so a bare allegation of anxiety doesn't tell us much. Some forms of anxiety or emotional harm are cognizable under the common law, but others are not. And this

15

distinction appears to turn on both the defendant's conduct giving rise to the anxiety and *the anxiety's severity*." *Garland*, 999 F.3d at 439 (emphasis added).

Haver's circumstances are more analogous to the plaintiff's injuries in *Morgan*, where the plaintiff alleged similar facts of emotional distress due to a FDCPA violation. See *Morgan*, 2023 WL 5808365, at *3 (he alleged that "it is embarrassing when I go into my own bank and I don't qualify for anything"; "I believe the damages are monetary damages. Monetary damage and loss from not being able to start a business, start my business back to rolling. The stress. The anxiety. It's a lot.") (Internal quotations omitted). The court, citing *Garland*, held that Morgan's allegations were "bare allegations of emotional distress" and were thus insufficient to satisfy the injury in fact requirement. *Id*.

Like the allegations discussed in *Morgan* and *Garland*, Haver's testimony says "nothing about severity." *Garland,* 999 F.3d at 440. Haver's embarrassment and humiliation due to him having limits on his disposable income is no more indicative of severity than the embarrassment that Morgan suffered due to his inability to qualify for lines of credit or start a business.

This conclusion is supported by the relevant caselaw. In *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665 (7th Cir. 2021), dismissed for lack of standing, the plaintiff testified that "she got less sleep and felt intimidated, worried,

16

and embarrassed" as the result of an FDCPA violation. *Id*. at 668. The Seventh Circuit noted that "Wadsworth's own attorney asked her about the 'specific types of injuries' caused by [defendant's] letter, to which Wadsworth merely replied: 'Stress, anxiety.'" *Id*. The court concluded that "[a]s our bevy of recent decisions on FDCPA standing makes clear, anxiety and embarrassment are not injuries in fact." *Id*. at 668-669. "Indeed," the court noted, "we have expressly rejected 'stress' as constituting concrete injury following an FDCPA violation.... These are quintessential abstract harms that are beyond our power to remedy. The same is true of the stress and embarrassment that Wadsworth complains of in this case." *Id*.. Similarly, the Second Circuit stated that "[a] perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing." See *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 (2d Cir. 2021).

As the *Morgan* court noted, "there is a difference between a 'bare' statement of emotional harm devoid of any supporting facts and an assertion of emotional harm that is supported by specific factual details." *Morgan*, 2023 WL 5808365, at *4. Haver has not provided details regarding the nature or severity of the embarrassment and humiliation he suffered. Accordingly, the Court finds that he fails to demonstrate that he has suffered an independent concrete harm.

17

Additionally, the Court notes that Haver's final argument with respect to the injury-in-fact requirement—that the dispute comment caused his refinancing application to fail, costing him hundreds of dollars a month—is also appears to be speculative. Indeed, Haver produces no evidence to demonstrate that, if he had been able to refinance his mortgage, he would have saved "a couple hundred" dollars a month. ECF No. 28-3, PageID.323.

The Court will discuss traceability below.

### B. Traceability

At the summary judgment stage, Haver fails to show that the denial of his refinancing application is attributable to the dispute comment LVNV disclosed to Equifax and TransUnion. As stated *supra*, Interfirst sent Haver a denial letter that identified "excessive obligations in relation to [his] income" as the principal reason for the credit denial. ECF No. 28-3, PageID.278. Based on Haver's testimony, the credit denial letter that Interfirst sent to Haver seems to indicate that the denial was not based on the TransUnion and Equifax disclosures at issue in this litigation, though his belief that the dispute comment played a role in the denial remains. And Haver cites no evidence to cast his testimony in a different light or explain how obtaining the refinancing would have saved him money.

18

Further, Haver fails to show that his emotional distress is attributable to LVNV. This is true because he attributes the emotional distress to the fact that he had limits on his disposable income. And he believes that those limits would have been less burdensome had he been able to obtain mortgage refinancing. But Haver failed to demonstrate that the denial of his mortgage application was attributable to the dispute comment; thus, he also fails to show traceability between his emotional distress and the dispute comment.

## IV. Conclusion

Haver has not shown that he suffered a concrete injury or that his injuries are fairly traceable to LVNV's conduct. He does not have standing to bring his FDCPA claim, and the Court lacks subject matter jurisdiction over that claim. The FDCPA claim will be dismissed.

Because the Court dismisses the only federal claim in this litigation, it also declines supplemental jurisdiction over the remaining state law claims. See *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998) (stating that "28 U.S.C. § 1367(c)(3) ... provides that a district court 'may' (rather than must) decline to exercise jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction.' "). Because the Court declines to exercise

supplemental jurisdiction over Haver's state law claims, the Court will dismiss them without prejudice.

For the reasons set forth above, the Court **GRANTS** LVNV's motion for summary judgment [ECF No. 42], **DENIES** Haver's motion for summary judgment [ECF No. 41], and finds that LVNV's motion for leave is **MOOT** [ECF No 49].

**IT IS SO ORDERED.**

    /s/ Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated: March 5, 2024

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 5, 2024, by electronic and/or ordinary mail.
/s/ Lisa Bartlett
Case Manager